IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0049-12






ROBERT BRYANT, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE ELEVENTH COURT OF APPEALS


MIDLAND COUNTY





 Alcala, J., delivered the opinion of the Court in which Keller, P.J., and
Meyers, Price, Womack, Keasler, Hervey, and Cochran, J.J., joined. Johnson,
J., dissented.


O P I N I O N 



 In its petition for discretionary review, the State challenges the court of appeals's
judgment in favor of appellant, Robert Bryant. See Bryant v. State, No. 11-10-00145-CR,
2011 Tex. App. LEXIS 7835 (Tex. App.--Eastland Sept. 29, 2011) (not designated for
publication), rehearing denied by, opinion withdrawn by, substitute opinion at 355 S.W.3d
926 (Tex. App.--Eastland 2011). The court of appeals held that the trial court abused its
discretion by revoking appellant's deferred-adjudication community supervision for failure
to pay restitution and that appellant preserved this issue for appeal. Bryant, 355 S.W.3d at
932. The court of appeals applied former Texas Code of Criminal Procedure article
42.037(h), hereinafter called the "former restitution statute," which required that, "[i]n
determining whether to revoke probation," (1) a trial court "shall" consider five factors
pertaining to a defendant's financial circumstances. (2) See former Tex. Code Crim. Proc.
Ann. art. 42.037(h) (West 2000). We conclude that the court of appeals properly determined
that appellant preserved his challenge and that the abuse-of-discretion standard of review
applied to the trial court's decision to revoke community supervision, including its
consideration of the defendant's financial circumstances. We, however, conclude that, by
revoking appellant's deferred adjudication and placing appellant on regular community
supervision with the continued opportunity to fulfill the restitution obligation, the trial court
did not abuse its discretion. Because the court of appeals erred by reversing the trial court's
decision, we reverse the judgment of the court of appeals and render a judgment affirming
the judgment of the trial court. 

I. Background

 A. Proceedings in Trial Court

 Appellant was charged with misapplication of trust funds and received ten years'
deferred-adjudication community supervision, a condition of which was payment of nearly
$200,000 restitution. (3) Shortly before the expiration of appellant's supervision period, the
State filed a motion to revoke, alleging only that appellant had failed to pay the full amount
of restitution ordered. The remaining balance was approximately $164,000. Appellant pled
not true. 

 The trial court held a hearing, at which the sole issue was appellant's ability to make
the restitution payments. After introducing considerable evidence of appellant's financial
straits, appellant's attorney argued that appellant had complied with all of the conditions of
his community supervision, except for paying restitution that he was financially unable to
pay. Amidst the exchange between the trial judge and the parties, the judge made the
following comment: "If it were fees owed to probation, there would not be a problem. But
this is restitution to a victim. That's the Court's problem, that I can't waive." Defense
counsel responded, "It's not a waiver, because the judgment is there." The trial court
adjudicated appellant's guilt and sentenced him to regular community supervision under the
term of two years' confinement, probated for seven years. The Court's order expressly stated
that this sentence was "an alternative to imprisonment" and was intended to serve "the ends
of justice and the best interest of both the public and the defendant." The order also reduced
appellant's monthly minimum restitution payments and waived other court costs and fees. 

 B. Proceedings On Appeal

 On direct appeal, the court of appeals rejected appellant's sufficiency challenge
premised on a violation of his federal constitutional due-process rights, but reversed the trial
court's judgment on the grounds that the trial court had abused its discretion in revoking his
community supervision under the former restitution statute. Bryant, 355 S.W.3d at 931-33.

 In finding the evidence sufficient, the court was unpersuaded by appellant's argument
that the federal Constitution prohibits revocation of community supervision when a person
is financially unable to make community-supervision payments, including restitution. See id.
at 931. It explained that applicable Supreme Court precedent, Bearden v. Georgia, holds that
imprisonment of a person who is unable to make court-ordered payments violates his
constitutional rights to due process and equal protection only when the trial court failed to
consider the efficacy of alternatives to imprisonment. See id. at 930-31 (discussing Bearden
v. Georgia, 461 U.S. 660, 673 (1983)). The court of appeals concluded that the trial court
did not run afoul of Bearden in revoking appellant's deferred-adjudication community
supervision because the trial court sentenced appellant to straight community supervision as
an alternative to imprisonment. Id. at 931. The court noted that Bearden "imposes limits on
revocation punishment where the probationer lacks the ability to pay, but makes no
suggestion that such a revocation is impermissible." Id. (citing Bearden, 461 U.S. at 672).

 The court of appeals sustained appellant's second issue, in which he argued that,
under Texas statutory law, the trial court abused its discretion by revoking his community
supervision because the evidence did not show that appellant was able to make the unpaid
restitution payments. Id. at 932. In reaching its decision, the court of appeals applied the
former restitution statute rather than article 42.12 § 21(c) of the Texas Code of Criminal
Procedure, which appellant had argued applied. Id. at 931; compare former Tex. Code Crim.
Proc. Ann. art. 42.037(h) (West 2000), with Tex. Code Crim. Proc. art. 42.12 § 21(c).
Article 42.12 § 21(c), hereinafter called the "ability-to-pay statute," requires the State, in a
revocation hearing, to prove by a preponderance of the evidence that the defendant was able
to pay, and did not pay, compensation paid to appointed counsel, community-supervision
fees, or court costs as ordered by the judge. (4) See Tex. Code Crim. Proc. art. 42.12 § 21(c).
Appellant acknowledged that the ability-to-pay statute mentions only revocations based on
failure to make these specified payments, but suggested that it should be interpreted as also
including revocations based on failure to pay restitution. Appellant argued that, although the
statute does not specifically mention restitution, "there is a constitutional imperative that the
defendant is not deprived of his liberty due to poverty" and, therefore, that it was necessary
to construe the statute as requiring the State to prove that the defendant was able to pay
restitution and did not. In support, he cited Tate v. Short, 401 U.S. 395, 397-98 (1971), in
which the Supreme Court held that "imprisonment [of an indigent] for nonpayment
constitutes . . . unconstitutional discrimination." 

 Agreeing with the State that the ability-to-pay statute does not govern restitution, the
court of appeals determined that the restitution statute is the law applicable when a defendant
challenges revocation based on failure to pay restitution. Bryant, 355 S.W.3d at 931. The
court of appeals, however, determined that the trial court had failed to comply with the
former restitution statute. See id. at 932. The court held that the trial court had abused its
discretion by revoking appellant's community supervision "without giving due consideration
to the factors that, pursuant to the [former restitution statute], it 'shall consider.'" Id. The
court of appeals observed that "[n]othing in the record reflects that [appellant] failed to pay
or that he had the ability to pay more than the $300 per month that he faithfully paid every
month for almost ten years." (5) Id. Citing the trial court's comment that it could not "waive"
restitution, the court of appeals determined that the trial court failed to give "appropriate
consideration" to the five factors listed in the former restitution statute. Id. 

 On motion for rehearing, the State argued that appellant had failed to preserve a
restitution-statute claim because he did not advance that legal theory at the hearing. The
court of appeals granted the State's motion and issued a new opinion, holding that appellant
had preserved the issue. Id. at 931. The court of appeals explained that, although he did not
use "magic words" or specifically cite the former restitution statute, appellant's evidence and
arguments were sufficiently straightforward to communicate to the court that revocation was
improper because he was financially unable to make restitution payments. Id. at 932. The
court concluded that appellant had preserved the issue and maintained its judgment reversing
the revocation order. Id. at 932-33.

 In its petition for discretionary review, the State raises two issues: (1) appellant failed
to preserve the restitution-statute issue by failing to expressly refer to that statute during the
revocation hearing, and (2) if that issue was preserved, the trial court, by considering his
financial circumstances in compliance with that statute, did not abuse its discretion in
revoking appellant's community supervision. (6) 

II. Preservation of Error

 In its first issue, the State argues that, at the revocation hearing, appellant raised only
a "general defensive argument" against revocation based on his inability to pay, which "does
not constitute an objection." The State explains that appellant was not specific enough to put
the trial judge on notice of an alleged violation of the former restitution statute because his
evidence and arguments about inability to pay "could have referred to the federal or Texas
constitution or statute, or could have simply been a plea for equitable relief." In response,
appellant echoes the court of appeals's analysis that preservation does not require "magic
words" or citation to a specific statute. He argues that, because "the whole trial was based
upon the inability to pay," the basis of his complaint was evident. Because appellant's
evidence and argument sufficiently apprised the trial court of the basis of his complaint, we
agree with the court of appeals that error was preserved. 

 "The purpose of requiring a specific objection in the trial court is twofold: (1) to
inform the trial judge of the basis of the objection and give him the opportunity to rule on it;
(2) to give opposing counsel the opportunity to respond to the complaint." Resendez v. State,
306 S.W.3d 308, 312 (Tex. Crim. App. 2009). The former restitution statute required that the
trial court "consider" a defendant's ability to pay restitution in determining whether to revoke
community supervision when the violation alleged was failure to make that payment. See
former Tex. Code Crim. Proc. Ann. art. 42.037(h) (West 2000). This issue was at the heart
of appellant's revocation hearing. 

 The trial judge and prosecutor knew that appellant's inability to pay restitution was
the sole basis of defense counsel's argument against revocation; they were well aware that
appellant was urging consideration of his financial circumstances as described in the former
restitution statute. See Resendez, 306 S.W.3d at 312; Ford v. State, 305 S.W.3d 530, 533
(Tex. Crim. App. 2009). As the court of appeals correctly observed, although appellant "did
not specifically cite [the former restitution statute], he presented evidence and has maintained
throughout the proceedings that revocation was improper because he was unable to make the
restitution payments." Bryant, 355 S.W.3d at 932. Further, "[a] party need not spout 'magic
words' or recite a specific statute to preserve an issue" as long as the basis of his complaint
is evident to the trial court. Id. at 931-32. Because the former restitution statute was the law
applicable to appellant's evidence and arguments that revocation was improper due to his
inability to pay restitution, the court of appeals properly determined that his complaint was
preserved for appeal. Bryant, 355 S.W.3d at 932. We overrule the State's first issue.

III. Permissibility of Revocation for Failure to Pay Restitution

 In its second issue, the State contends that the court of appeals erred in construing the
former restitution statute as establishing an evidentiary standard for revocations based on
failure to pay restitution rather than as setting forth a procedural requirement that the trial
court consider a defendant's financial circumstances at a revocation hearing. The State
argues that the record reveals that the trial court considered the statutory factors in
compliance with the terms of the statute, which did not require that the court weigh the
factors in any particular manner. See former Tex. Code Crim. Proc. Ann. art. 42.037(h)
(West 2000). Appellant responds that the trial court failed "to make the necessary findings
under the statute" as required by "a statute which uses the word[s] 'shall consider.'" He
concludes that the court of appeals did not err in finding the evidence insufficient to support
revocation under the statute. Because the parties dispute the meaning of the former restitution
statute, it is necessary to construe that statute to determine the Legislature's intent with
respect to a trial court's duties under these circumstances.

 A. Statutory Analysis

 When interpreting statutes, a court must "seek to effectuate the 'collective' intent or
purpose of the legislators who enacted the legislation." Boykin v. State, 818 S.W.2d 782, 785
(Tex. Crim. App. 1991). Toward that end, a court must focus its "attention on the literal text
of the statute in question and attempt to discern the fair, objective meaning of that text at the
time of its enactment." Id. However, when application of a statute's plain language would
lead to absurd consequences, or when "the language is not plain but rather ambiguous," a
court may consider extratextual factors as such as legislative history of the statute. Id. at 785-86. In this context, ambiguity exists when a statute may be understood by reasonably well-informed persons in two or more different senses; conversely, a statute is unambiguous when
it permits only one reasonable understanding. Mahaffey v. State, 364 S.W.3d 908, 913 (Tex.
Crim. App. 2012).

 The plain language of the former restitution statute permitted revocation for failure
to pay restitution as long as the trial court considered certain factors pertaining to a
defendant's financial circumstances. See former Tex. Code Crim. Proc. Ann. art. 42.037(h)
(West 2000). The statute expressly stated that a court "may revoke probation" for a
defendant's failure to comply with the restitution order. Id. It further provided that, "[i]n
determining whether to revoke probation," the trial court "shall consider" a defendant's
employment; earning ability; financial resources; willfulness of his failure to pay; and special
circumstances. Id. The plain language, therefore, gave a trial court discretion to revoke a
defendant's community supervision after the court had considered five factors related to the
defendant's financial circumstances. See id. It required neither that the trial court render
findings nor that revocations be conditioned on the quantity or quality of evidence adduced
as to the enumerated factors. Although treatment of revocation for failure to pay restitution
has varied historically, (7) the Legislature plainly expressed its desire to grant the trial court
increased discretion to revoke on that basis as compared to strict evidentiary requirements
for revocations premised on non-payment of court costs, attorney compensation, and
community-supervision fees. See Tex. Code Crim. Proc. art. 42.12 § 21(c) (prohibiting
revocation if insufficient evidence that defendant was able to make those payments).

 Having reviewed the plain language of the former restitution statute, we agree with
the State that, as long as a trial court considers the factors in its decision whether to revoke
a community supervision, a court is not required to weigh the factors in any particular
manner. See former Tex. Code Crim. Proc. Ann. art. 42.037(h) (West 2000). But a trial
court's discretion does have three limits. First, the State must prove at least one violation of
the terms and conditions of community supervision. See Moore v. State, 605 S.W.2d 924, 926
(Tex. Crim. App. 1980); Cardona, 665 S.W.2d at 493-94. Second, an appellate court will
review the trial court's decision for an abuse of discretion. See Rickels v. State, 202 S.W.3d
759, 763 (Tex. Crim. App. 2006) (trial court's order revoking community supervision
reviewed for abuse of discretion); Cardona v. State, 665 S.W.2d 492, 493 (Tex. Crim. App.
1984). Third, federal due process requires that a trial court consider alternatives to
imprisonment before incarcerating an indigent defendant who is unable to pay amounts due
under community supervision. Bearden, 461 U.S. at 672. 

 B. Trial Court Complied with the Former Restitution Statute 

 The record demonstrates that the trial court considered the statutorily enumerated
factors in making its revocation determination in compliance with the former restitution
statute. First, it heard extensive evidence regarding appellant's financial circumstances and
his efforts to make the required payments. Second, the trial court's revocation order stated
that, "after due consideration," the trial court had decided that it was in "the best interest" of
appellant to place him on regular community supervision in lieu of imprisonment, expressly
stating that this was "as an alternative to prison." Third, the trial court reduced appellant's
remaining monthly minimum payments and waived certain fees that appellant had been
ordered to pay. On this record, it is evident that the trial court carefully considered
appellant's financial circumstances in rendering its ruling.

 Finally, we note that it is unclear what the trial court intended by its comment that,
because the payments were for restitution, it could not "waive" them. To the extent that this
comment could be construed as suggesting that the trial court failed to consider appellant's
inability to pay, we do not find that this single comment outweighs the substantial evidence
that the trial court did consider appellant's financial circumstances. See Bryant, 355 S.W.3d
at 932. 

 We agree with the State that the record reveals that the trial court considered the
statutory factors in compliance with the terms of the former restitution statute, which did not
require that the court weigh the factors in any particular manner. See former Tex. Code
Crim. Proc. Ann. art. 42.037(h) (West 2000). Because the record shows that the State
proved that appellant violated at least one of the terms and conditions of his community
supervision, the court of appeals erred by determining that the trial court abused its discretion
in revoking appellant's community supervision. We note, however, that the court of appeals
properly determined that appellant's federal due-process rights were not violated because,
by sentencing appellant to straight community supervision as an alternative to incarceration,
the trial court did not imprison him for his inability to pay. See Bearden, 461 U.S. at 672. We
sustain the State's second issue. 

IV. Conclusion

 We reverse the judgment of the court of appeals and render a judgment affirming the
judgment of the trial court.

Delivered: October 24, 2012

Publish 

1. At the time, community supervision was referred to as "probation." 
2. The restitution statute effective when the trial court entered appellant's original restitution
order in January 2000 stated, 


The court may revoke probation . . . if the defendant fails to comply with the order. 
In determining whether to revoke probation . . . the court or parole panel shall
consider: (1) the defendant's employment status; (2) the defendant's earning
ability; (3) the defendant's financial resources; (4) the willfulness of the defendant's
failure to pay; and (5) any other special circumstances that may affect the defendant's
ability to pay.


Former Tex. Code Crim. Proc. Ann. art. 42.037(h) (West 2000). The court of appeals observed that
the current restitution statute, which applies to restitution orders entered on or after September 1,
2005, is unlike the former version, under which appellant's restitution was ordered, in that the
current statute has a sixth factor, "the victim's financial resources or ability to pay expenses incurred
by the victim as a result of the offense," and includes the words "current and future" in subsections
(2) and (3). Bryant, 355 S.W.3d at 932 (citing Act of May 27, 2005, 79th Leg., R.S., ch. 969, §§ 1,
3, 2005 Tex. Gen. Laws 3244) (codified at Tex. Code Crim. Proc. art. 42.037(h)).
3. The original community-supervision judgment ordered appellant to pay restitution "in equal
monthly payments calculated by dividing the total amount of restitution . . . by the months of
community supervision remaining after the defendant is released from confinement . . . unless
otherwise directed by the Midland County Community Supervision and Corrections Department."
The Department later entered a modified payment plan reducing his monthly payments from
$2084.00 to $300.00 "due to [appellant]'s financial hardship," but expressly stated that appellant was
"still obligated by court order to pay the total amount originally ordered . . . before the end of his
probation term . . . ." The Department further indicated that the modified payment plan would "be
reviewed yearly, and should [appellant]'s financial condition improve, the payment [would] be
revised to better reflect the true amount owed by [appellant] in this cause." The record does not
reveal that the plan was ever again modified.
4. Article 42.12 § 21(c) states, 


In a community supervision revocation hearing at which it is alleged only that the
defendant violated the conditions of community supervision by failing to pay
compensation paid to appointed counsel, community supervision fees, or court costs,
the state must prove by a preponderance of the evidence that the defendant was able
to pay and did not pay as ordered by the judge. The court may order a community
supervision and corrections department to obtain information pertaining to the factors
listed under Article 42.037(h) of this code and include that information in the report
required under Section 9(a) of this article or a separate report, as the court directs.


See Tex. Code Crim. Proc. art. 42.12 § 21(c). 
5. The court of appeals found that the evidence was sufficient to show that appellant had failed
to pay restitution as ordered by the trial court because, although he had regularly made his reduced
monthly minimum payments, he had not paid the entire amount that had been ordered. Bryant, 355
S.W.3d at 930. The court of appeals found that the trial court had abused its discretion in revoking
appellant's community supervision, however, because there was no evidence that appellant was able
to pay the total amount due. Id. at 932.
6. 
[6] The State's two issues ask,

1. Did the trial court's alleged failure to comply with Tex. Code Crim. Proc. art.
42.037(h), which mandates that a judge "consider" factors concerning an individual's
ability to pay restitution, render the evidence insufficient to support its decision to
revoke community supervision or is that alleged failure merely trial court error that
must be preserved by objection?

2. Did the trial court fail to "consider" factors concerning Appellant's ability to pay
restitution as required under Tex. Code Crim. Proc. art. 42.037(h)?
7. Prior to 2007, Article 42.12 provided an affirmative defense to revocation that a defendant
was unable to pay "compensation paid to appointed counsel, community supervision fees, court
costs, restitution, or reparations." See former Tex. Code Crim. Proc. 42.12 § 8(c), am. Acts 1977,
65th R.S., ch. 342 (S.B. 32), §§ 1, 2, effective August 29, 1977. Under that version, evidence
demonstrating inability to pay restitution precluded revocation on that basis. Id. In 2007, however,
in addition to shifting to the State the burden of demonstrating a defendant's ability to pay certain
court costs and fees, the Legislature deleted the term "restitution" from the statute. See Tex. Code
Crim. Proc. 42.12 § 21(c), am. Acts 2007, 80th Leg., R.S., ch. 604 (H.B. 312), § 1, effective
September 1, 2007. This reveals that, with respect to a defendant's failure to pay restitution, unlike
other court-ordered payments, the Legislature intended to eliminate both the State's burden of
demonstrating financial ability and the affirmative defense of inability to pay. Because appellant's
revocation hearing was held after September 1, 2007, the former statute that made inability to pay
restitution an affirmative defense is inapplicable. See id. § 2 ("The change in law made by this Act
applies only to a community supervision revocation hearing held on or after the effective date of this
Act.") and § 3 ("This Act takes effect September 1, 2007.").